UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAMELA A. JONES, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) C.A. No. 09-cv-30004-MAP |
| | ) |
| WALGREEN CO., ET AL., | ) |
| Defendants | ) |

MEMORANDUM AND ORDER REGARDING
DEFENDANT WALGREEN'S MOTION FOR SUMMARY JUDGMENT,
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT,
AND PLAINTIFF'S CROSS-MOTION FOR DISCOVERY RELIEF
(Dkt. Nos. 73, 85, & 107)

February 24, 2011

PONSOR, D.J.

## I. INTRODUCTION

Plaintiff, Pamela Jones, filed a ten-count complaint

against her employer, Defendant Walgreen Company ("Defendant

Walgreen"); Metropolitan Life Insurance Company, the claims

administrator for Defendant Walgreen's Income Protection

Plan for Store Managers; and Michael Campbell, an employee

of Defendant Walgreen.  Plaintiff alleges retaliation in

violation of 42 U.S.C. § 2000e-3 (Count I); retaliation in

violation of Mass. Gen. Laws ch. 151B, § 4 (Count II);

disability discrimination in violation of the Americans with

Disabilities Act, 42 U.S.C. §§ 12101 et seq. (Count III);
disability discrimination in violation of Mass. Gen. Laws
ch. 151B (Count IV); and numerous violations of the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.
§§ 1001 et seq. (Counts V-X).  In prior proceedings, the
court dismissed Counts VI and X and stayed various of
Plaintiff's other ERISA claims.

At issue here are Defendant Walgreen's motion for
summary judgment on Counts I, II, III, and IV (Dkt. No. 73),
and Plaintiff's motion for partial summary judgment on
Counts III and IV (Dkt. No. 85).  For the reasons stated
below, Defendants' motion will be allowed, and Plaintiff's
motion will be denied.

## II.  FACTS

Plaintiff began working as a Store Manager for
Defendant Walgreen in Enfield, Connecticut, in 1986.
Plaintiff reported to District Manager Jerry Telson, who had
worked for Defendant Walgreen for more than twenty years.
In January 2004, Plaintiff injured her knee when she slipped
on ice at work.  Plaintiff was on medical leave until May,
when she returned to work, but left again in June to have

-2-

surgery on her knee. (Dkt. No. 89, Pl. Statement of Facts, ¶ 4.) On November 30, 2004, Plaintiff sent Telson a report from her orthopedist, Dr. Martin Luber, regarding her prognosis and work restrictions. The report provided a return-to-work date of "undetermined," with the recommendation that Plaintiff do "[n]o work," "no prolonged standing or walking," "[n]o squatting, kneeling, stair climbing," and "[n]o lifting, pushing, pulling, or carrying greater than 25 pounds" until her next appointment, the date of which was not on the report. (Dkt. No. 93, Ex. 2.) The report further stated, "I think that Ms. Jones is most likely left with some permanent restrictions. . . . I think that she could perform a sedentary job or a job in which she is not expected to carry or lift more than 25 lbs." (Id.)

Nevertheless, three months later, on March 2, 2005, Plaintiff informed Telson that she wished to return to work with "reasonable accommodations." (Dkt. No. 81, Ex. 11.) On April 14, 2005, Plaintiff followed up this letter with a revised report from Dr. Luber restricting her to lifting less than twenty-five pounds and recommending minimal bending, stooping, and squatting. (Dkt. No. 81, Ex. 12.)

In early May 2005, Telson offered Plaintiff a position as
Training Manager, a slot below her prior position of Store
Manager, which she accepted. However, days later, on May 4,
Plaintiff took another medical leave to have surgery on her
foot. (Dkt. No. 81, Ex. 14.) Following this surgery,
Plaintiff sent a doctor's note to Telson, stating she
could return to work on July 11, 2005, with no new
restrictions. (Dkt. No. 81, Ex. 15.)

Meanwhile, in July 2005, while out on medical leave,
Plaintiff filed an action with the Connecticut Commission on
Human Rights and Opportunities and the federal Equal
Opportunity Employment Commission accusing Defendant
Walgreen of engaging in illegal workplace discrimination
against women. In mid-2006, Plaintiff received release of
jurisdiction and right-to-sue letters, and she then filed a
class action complaint in the District of Connecticut.
Defendant Walgreen was served with notice of process on July
1, 2006.[1]

---

[1] As of August 27, 2010, the suit had settled for
$17,000,000 to be distributed among 21,000 class members,
including Plaintiff, with each class member receiving between
$100 and $6000. (Dkt. No 93, Ex. 17.)

-4-

In mid-October 2005, Telson offered Plaintiff a
promotion to her prior position as a Store Manager for the
Springfield, Massachusetts location.  On October 12, 2005,
Plaintiff responded to him by email to express "concerns I
have which you should be aware of before I accept this
position."  (Dkt. No. 1, Ex. 5.)  Plaintiff described her
"substantial" health restrictions, which precluded her from
climbing ladders, lifting anything in excess of twenty
pounds, and working for longer than eight hours, and stated
that she believed that the store was understaffed and that
she deserved a raise.  (Id.)  Finally, Plaintiff clarified
that "[a]s the Store Manager, it will be my approach to
delegate, as often as time and circumstances allow, the
physical obligations of store operations to the assistant
managers and store personnel."  (Id.)

In September 2006, Plaintiff expressed to Telson that
she was "walk[ing] imbalanced" and having difficulty putting
in shelving, which she attributed "maybe" to "the way I
stand because of my knees."  (Dkt. No. 93, Ex. 10, Telson
Dep. 274:22-25.)  Plaintiff also told Telson that she was
working longer hours than her doctor had advised.  (Id. at
171:11-12.)  Telson requested updated medical information

from Plaintiff, which she sent on September 11 with
additional clarifications on September 14.  Dr. Luber's
response described significant additional limitations beyond
those noted in April 2005.  He indicated that Plaintiff now
could not stand or walk for longer than thirty minutes
without sitting and could not stand or walk on any day for
longer than a total of four-to-five hours.  She could not at
any time squat, stoop, bend, reach below her knees, or climb
stairs or ladders.  She could not lift anything more than
fifteen pounds.  (Dkt. No. 93, Exs. 11, 13.)

One month later, on October 13, 2006, Telson tendered
Plaintiff a notice of  termination, effective immediately.
The letter stated in part:

> I have reviewed the September 11 and September 14,
> 2006 correspondence from Martin J. Luber, M.D.
> which outline your permanent work-related
> restrictions.  Based on that information, it is
> clear that you can no longer perform the essential
> functions of your position as Store Manager.
> Therefore, we have no choice but to relieve you of
> your position effective today. . . .  Please know
> that there may be district office positions
> available for which you may be qualified given
> your skill set and the essential functions of
> which you can perform given your restrictions. . .
> . Please let me know if there are any other areas
> of the country or specific districts in which you
> are interested.

-6-

(Dkt. No. 93, Ex. 15.)  The letter outlined Plaintiff's benefits, including that she would receive full pay through January 18, 2007.  In a series of letters in November, Plaintiff expressed her interest in working in a district office but did not specify, despite Telson's request, in which of Defendant Walgreen's 231 district offices she would be willing to work.  (Dkt. No. 82, Exs. 23-26.)  Discussions about alternative employment apparently ceased at that point.

### III. <u>DISCUSSION</u>

A.  <u>Legal Standard</u>.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact.  The burden then shifts to the opposing party who must demonstrate that a reasonable jury could return a verdict in its favor based on the evidence.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "A party opposing summary judgment must present definite, competent evidence to rebut the motion."  <u>Torres v. E.I. Dupont De Nemours & Co.</u>, 219 F.3d 13, 18 (1st Cir. 2000) (citations omitted).

B.  <u>Counts III and IV: Disability Discrimination Claims</u>.

Plaintiff has alleged that Defendant Walgreen discriminated against her based on her disability in violation of 42 U.S.C. §§ 12101 et seq. and Mass. Gen. Laws ch. 151B, § 4 (16).  Because "Chapter 151B is considered the 'Massachusetts analogue' to the federal Americans with Disabilities Act," the court's analysis under federal and state law is the same.  Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 153 (1st Cir. 2010) (quoting Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 32 & n.1 (1st Cir. 2001)).  To establish a prima facie case of disability discrimination, Plaintiff must prove: "(1) that she was 'disabled' within the meaning of the ADA; (2) that she was able to perform the essential functions of her job with or without accommodation; and (3) that she was discharged or adversely affected, in whole or in part, because of her disability."  Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 82 (1st Cir. 2008).

1. Prong One: Disability.

To prove that she is disabled under the ADA, Plaintiff must demonstrate that she has "a physical or mental impairment which substantially limits one or more of [her] major life activities."  Carreras v. Sajo, 596 F.3d 25, 32

(1st Cir. 2010) (citing 42 U.S.C. § 12102(1)).[2] "The ADA
does not define 'substantially limits,' but 'substantially'
suggests 'considerable' or specified to a large degree."
Id. at 33 (citations omitted). Without question, "[t]o be
substantially limiting, an impairment must cause a person
. . . to be significantly restricted in the performance of a
particular major life activity as compared to an average
person in the general population." Id. The First Circuit
has emphasized that "'[i]t is insufficient for individuals
attempting to prove disability status under this test to
merely submit evidence of a medical diagnosis of an
impairment.'" Calef v. Gillette Co., 322 F.3d 75, 83 (1st
Cir. 2003) (quoting Toyota Motor Mfg., Inc. v. Williams, 534
U.S. 184, 198 (2002). Instead, plaintiffs must offer
"'evidence that the extent of the limitation caused by their
impairment in terms of their own experience is
substantial.'" Id.

Plaintiff alleges that she has a "well-documented,
chronic condition in both of her knees." (Dkt. No. 95, Pl.
Mem. in Supp. at 11.) Because "walking, standing, lifting,
[and] bending" are considered "major life activities" under
42 U.S.C. § 12102(2)(A)(1), she argues, she is therefore

---

[2] Plaintiff does not contend that she was regarded as
having an impairment as defined by 42 U.S.C. § 12102(1)(c).

disabled under the ADA.  However, other than Dr. Luber's
work restrictions, the record is devoid of any evidence --
not affidavits, not deposition testimony, not medical
reports -- on which a jury could determine the extent of her
limitations outside the immediate context of her job as a
Walgreen's Store Manager.  It is well established that
Plaintiff's work restrictions alone cannot demonstrate legal
"disability" because "a claimant must show an inability to
work in a 'broad range of jobs,' rather than one specific
job."  Sheehan v. City of Gloucester, 321 F.3d 21, 25 (1st
Cir. 2003) (quoting Sutton v. United Air Lines, 527 U.S.
471, 492 (1999)).  Indeed, Dr. Luber's most recent report,
dated April 12, 2010, stated, "I believe that Ms. Jones
could be gainfully employed."  (Dkt. No. 93, Ex. 16.)

Admittedly, it is beyond dispute that Plaintiff has
significant restrictions on walking, squatting, bending, and
standing to some degree, and Plaintiff contends that the
court can infer that Dr. Luber's recommended limitations on
Plaintiff would follow her throughout her day.  Fortunately,
the court need not venture further into the thorny issue of
whether the record supports a finding that Plaintiff is
"disabled" as defined by the federal and state statutes.
For purposes of this analysis the court will assume she
could sustain her burden on this element.  As will be seen,

-10-

however, it is beyond dispute that no reasonable jury could find in Plaintiff's favor on the second element of her disability claim, requiring her to show that she was able to perform the essential functions of her job even with reasonable accommodations.

### 2. Prong Two: Ability to Perform Essential Functions of the Job.

On the second prong of the disability analysis, Plaintiff must prove that she was a qualified individual, meaning "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). See Calef, 322 F.3d at 86 (explaining that an employer has no duty to provide reasonable accommodations if employee is not a qualified individual). Plaintiff alleges that she was able to perform all of the essential functions of a Store Manager with accommodations and that, if she was not so performing, more accommodations would have enabled her to do so. Defendant Walgreen argues that Plaintiff was not a qualified individual because she was incapable of performing all of the essential functions and no accommodations would have enabled her to perform them.

### a. Essential Functions of the Store Manager.

The essential functions of the Store Manager position are not in dispute, nor is the fact that the official job description of the position fails to encompass all of the requirements. Plaintiff testified that prior to her knee injury in 2004, her Store Manager duties included inspecting the sales floor, assisting customers with requests, placing signs on the sales floor, cleaning shelves, restocking shelves, unloading delivery trucks, and using a ladder to reach high shelves. (Dkt. No. 79, Ex. 1, Jones Dep. 14:3-19:14.) She further testified that she walked the floor "numerous" times on a daily basis. (Id. at 19:15-17.) Plaintiff described her job duties to Dr. Steven Schutzer, who was conducting an independent medical evaluation in conjunction with her disability application, as requiring a 70-80 hour work week and including unloading trucks, unpacking merchandise, stocking shelves, climbing up and down, stooping, squatting, and kneeling. (Dkt. No. 82, Ex. 21.)

Telson, who was a Store Manager for fourteen years before his promotion to District Manager, testified that the job was physically demanding:

> You're going to sweep floors, You're going to clean bathrooms. You're going to unload trucks. You're going to stock shelves. You're going to make end stands become side racks, build tables, make the Valentine aisle become the Easter aisle, the Easter aisle become the summer, the back to

> school, the Halloween.  So it's a physical job as
> well. . . . You have to unload trucks.  You've got
> to pull the stock.  You've got to load shelves.

(Dkt. No. 93, Ex. 10, Telson Dep. 59:2-10; 60:5-7.)  The
"essential physical elements" of the position also included
"pulling back room" and "resets and revisions," which were
essentially inventorying the entire store and rearranging
shelves.  (<u>Id.</u> at 111:21-24.)

    Telson further testified that one of the most important
jobs of the Store Manager is to "walk their store aisle by
aisle three feet by three feet every day," a task that could
take more than an hour given the constant interruptions by
customers, vendors, and employees.  (Dkt. No. 93, Ex. 10,
Telson Dep. 99:7-8, 146:1-15.)  Moreover, according to
Telson, the store-walking task could not be done effectively
in segments because the purpose was to get an overview of
what was needed at the store and to create a daily task
list.  (<u>Id.</u> at 150:17-25.)  Defendant Walgreen deposed two
Store Managers, one of whom testified that he spends six-
and-a-half hours on the sales floor every day (Dkt. No. 84,
Ex. H, Dickey Dep. 48:25) and one of whom testified that she
spends two or three hours doing her walkthrough each day
(Dkt. No. 84, Ex. I, Patchell Dep. 63:19.)

    b.   <u>Plaintiff's Inability to Perform the Essential
        Functions</u>.

    It is not disputed that "Plaintiff bears the burden of

showing [s]he is qualified." Calef, 322 F.3d at 85.  Telson
explained why Plaintiff's specific restrictions prevented
her from performing her job.  Regarding the limitation that
she stand no more than four-to-five hours per day, he
stated, "I don't think we could accommodate, on a continuous
basis, when you have to be out on the sales floor, taking
care of customers, directing traffic, taking customers to
product, instructing employees, observing employees,
training employees."  (Dkt. No. 93, Ex. 10, Telson Dep.
177:18-23.)  He testified that a Store Manager regularly
must bend, stoop, and reach to the ground or to low shelves
to get products for customers or to pick up items that have
fallen.  (Id. at 182:4-12.)  Significantly, all of these
physical exertions were prohibited by Plaintiff's permanent
restrictions that she do "no squatting, stooping, bending,
reaching below knees."  (Dkt. No. 93, Exs. 11, 13.)  Telson
further noted that, although the walkthrough could be
performed before the store opened when fewer interruptions
would impede the task, this accommodation would not have
been available to Plaintiff, who was restricted to working
only eight hours each day and would have been required also
to be present during prime customer hours later in the day.
(Dkt. No. 93, Ex. 10, Telson Dep. 151:15-20.)

    In response, Plaintiff argues that the strongest

-14-

evidence of her ability to perform the job was that she had
worked as a Store Manager since 1986 and was working as a
Store Manager until the day that she was terminated.
Clearly, though, the issue is not whether she was employed
as a Store Manager, which she indisputably was, but whether
she was able to perform the essential functions of the
position.  "'An ADA plaintiff may not rely on past
performance to establish that [s]he is a qualified
individual without accommodation when there is undisputed
evidence of diminished or deteriorated abilities.'"
Richardson v. Friendly Ice Cream Corp., 594 F.3d 69, 79 (1st
Cir. 2010) (quoting Land v. Washington County, Minn., 243
F.3d 1093, 1096 (8th Cir. 2001)).  Here, Dr. Luber's reports
provide such undisputed evidence.

        Plaintiff additionally argues that she could, and did,
delegate those tasks that required her to exceed her
restrictions.  Telson, in fact, stated that a Store Manager
could delegate many responsibilities.  For example, although
the Store Manager is responsible for ensuring that the
bathrooms are clean and floors are swept, a Store Manager
could delegate the actual cleaning and sweeping.  (Dkt. No.
93, Ex. 10, Telson Dep. 65:19-66:2; 68:2-4.)  Store Manager
Rosemary Patchell testified that she never unloads a truck
but does sweep the floors.  (Dkt. No. 84, Ex. I, Patchell

-15-

Dep. 65:12-66:12.)

However, "'the law does not require an employer to accommodate a disability by foregoing an essential function of the position or by reallocating essential functions.'" Richardson, 594 F.3d at 81 (quoting Mulloy v. Acushnet Co., 460 F.3d 141, 153 (1st Cir. 2006)). As the First Circuit similarly held in Richardson, "it would be unreasonable for [Plaintiff] to delegate so many tasks that she would no longer be performing her essential function of physically assisting with [Defendant Walgreen's] operations." Id.

Finally, Plaintiff contends that if Defendant Walgreen did not believe that she could perform the essential functions of the position, it should have engaged her in discussions about additional accommodations rather than summarily terminating her. See 29 C.F.R. 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process . . . to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.").

It is true that, had Defendant Walgreen done so, the parties might have reached an agreement that Plaintiff was no longer qualified to be a Store Manager. That said, while

-16-

"[t]here may well be situations in which the employer's
failure to engage in an informal interactive process would
constitute a failure to provide reasonable accommodation
that amounts to a violation of the ADA," this is not always
the case. Jacques v. Clean-Up Group, 96 F.3d 506, 515 (1st
Cir. 1996). "An interactive process claim cannot succeed
unless the interaction could have led to the discovery of a
reasonable accommodation that would have enabled the
plaintiff to perform the essential functions of her
position." Richardson, 594 F.3d at 82. Plaintiff has
identified no accommodation that would have enabled her,
within her restrictions, to perform the undisputedly
physically demanding job of Store Manager. Phelps v. Optima
Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001) ("The burden
is on [the plaintiff] to show the existence of a reasonable
accommodation").[3]

The evidence that the Store Manager position is
physically demanding is overwhelming, as is the evidence
that Plaintiff had significant restrictions on her ability

---

[3] At the time she was terminated, Plaintiff was not
following her doctor's restriction that she work only an
eight-hour day. Plaintiff stated that four days each week,
she worked for nine hours, and one day each week, she worked
for twelve hours. She also worked a half or full day on
Saturday and Sunday as needed. (Dkt. No. 111, Ex. 3.)
However, an employer is obviously not obligated to offer an
"accommodation" to an employee that is contrary to medical
advice and would place the employee at risk.

to walk, stand, stoop, bend, reach, and squat.  Plaintiff
has suggested no accommodations that would have enabled her
to perform the various tasks and duties that the position
requires.  Accordingly, Plaintiff has failed to demonstrate
that she is a qualified individual who is able to perform
the essential functions of the job.

    3. <u>Prong 3: Adverse Employment Action</u>.

    Given Plaintiff's failure to satisfy the second prong
of the <u>prima</u> <u>facie</u> analysis, the court could end its
discussion here.  However, the adverse employment action
prong merits brief attention.

    Plaintiff received her notice of termination as Store
Manager on October 16, 2006.  Plaintiff argues that the
proximity of her termination to Telson's September receipt
of more specific medical documentation of her restrictions
is evidence that she was fired because of her disability.
Defendant Walgreen points out that Dr. Luber's report added
significantly increased restrictions and for the first time
made them permanent.  Based on this report, Defendant
Walgreen determined that Plaintiff could not perform the
essential functions of her job, which included walking and
standing for long periods, and, thus, it was obliged to
terminate her from the position.

    The medical records in evidence support both Defendant

Walgreen's determination that Plaintiff could not perform the essential functions of her job, as well as its contention that it was not until September 2006 that it learned of the severity and permanence of Plaintiff's limitations. As noted above, in April 2005, Dr. Luber recommended that Plaintiff minimize squatting, kneeling, stair climbing, bending, stooping, or reaching below the knees, and set her weight limit for lifting at twenty-five pounds. (Dkt. No. 93, Ex. 5.) In sharp contrast, in September 2006, Dr. Luber restricted Plaintiff permanently to no squatting, kneeling, stair climbing, bending, stooping, or reaching below the knees. Moreover, at this time, she was required to minimize standing and walking, lift no more than fifteen pounds, and work no more than an eight-hour day. (Dkt. No. 93, Ex. 11.)

Particularly important here is the distinction that Plaintiff has failed to draw between her disability and her restrictions. Plaintiff contends that she was wrongfully terminated because of her disability. Defendant Walgreen freely admits that she was terminated because of her restrictions. Plaintiff has conflated her disability and her restrictions, overlooking the fact that "[a]n employer may base a decision that the employee cannot perform an essential function on an employee's actual limitations, even

when those limitations result from a disability." <u>Calef v.</u>
<u>Gillette Co.</u>, 322 F.3d 75, 86 (1st Cir. 2003).  The ADA does
not require an employer to retain an employee whose
limitations are the cause of her inability to perform the
essential functions of her job, even where those limitations
are disability-related.  "The ADA prohibits discrimination
against 'a qualified individual [on the basis of]
disability.'"  <u>Mulloy v. Acushnet Co.</u>, 460 F.3d 141, 145
(1st Cir. 2006)(quoting 42 U.S.C. § 12112(a)).  <u>See also</u> <u>St.</u>
<u>Laurent v. UPS</u>, 416 F. Supp. 2d 212, 222 (D. Mass. 2006)
(employer properly dismissed employee whose medical
restrictions prevented him from performing all essential
functions of his position).  Here, where Plaintiff was not a
qualified individual and where she was terminated not
because of her disability but because her restrictions
prevented her from performing her job even with
accommodations, Defendant Walgreen simply has not unlawfully
discriminated against her.

     In conclusion, because Plaintiff has failed to
establish that she was able to perform the essential
functions of her job, the court will allow Defendant's
motion for summary judgment on Counts III and IV and deny
Plaintiff's motion on the same counts.

C.   <u>Counts I and II: Retaliation Claims</u>.

Plaintiff has alleged that Defendant Walgreen retaliated against her in violation of 42 U.S.C. § 2000e-3 and Mass. Gen. Laws ch. 151B, § 4(4). Neither federal nor state law requires that a plaintiff succeed on a discrimination claim in order to assert a claim of retaliation. Wright v. CompUSA, Inc., 352 F.3d 472, 477 (1st Cir. 2003).

To establish a prima facie claim of retaliation, Plaintiff must demonstrate that she engaged in protected activity and suffered an adverse employment action as a result. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007). The only protected act that Plaintiff alleges is the filing of her gender discrimination lawsuit. She asserts that the temporal proximity between the filing in federal court of the lawsuit on July 1, 2006, and her termination on October 16, 2006,[4] is sufficient to establish a causal connection between the two.

"'The cases that accept mere temporal proximity

---

[4] In her deposition, Plaintiff suggests that a number of actions on the part of Defendant Walgreen were retaliatory, including a warning she received for removing company documents from the store and her "exclusion" from a company conference for Store Managers during the time she was a Training Manager. (Dkt. No. 80, Ex. 1, Jones Dep. 131:10-23.) The court declines to consider any of these allegations because Plaintiff did not raise them in her summary judgment motion or even in her complaint.

between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citation omitted); see also Ahern v. Shinseki, 629 F.3d 49 (1st Cir. 2010). In fact, "a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action." Ahern, 629 F. 3d *21. Admittedly, however, the three-and-one-half months between the filing of the complaint and Plaintiff's termination may be viewed by a jury as a short interval in comparison to her twenty-year career. Thus, the court will assume without deciding that Plaintiff has satisfied her prima facie burden, and turn to Defendant Walgreen's proffered "legitimate, nondiscriminatory reason" for its decision to terminate Plaintiff, which is, as noted above, its determination, based on new information from Dr. Luber, that she could no longer perform the essential functions of her job. Id.

Plaintiff contends that this explanation is pretextual. "An employee can establish pretext 'by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate

reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.'" Carreras v. Sajo, 596 F.3d 25, 37 (1st Cir. 2010) (emphasis in original) (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000)). To withstand summary judgment, "[a]ll a plaintiff has to do is raise a genuine issue of fact as to whether retaliation motivated the adverse employment action." Collazo v. Bristol-Myers Squibb Mfg., 617 F.3d 39, 50 (1st Cir. 2010). Here, Plaintiff has "adduced no significantly probative evidence tending to show that the proffered reason[] [was] a pretext masking a retaliatory animus." Ahern, 629 F.3d * 21. Instead, for the reasons noted in the court's discussion about Defendant Walgreen's termination decision, Defendant Walgreen legitimately believed that Plaintiff could no longer do her job based on new information that it had received from Dr. Luber as to Plaintiff's now-permanent restrictions.

Although Plaintiff asserts that Telson's request that she submit medical documentation was in itself evidence of retaliation because he had never before requested such documentation, Telson testified, and Plaintiff did not dispute, that he requested it only after Plaintiff complained to him that she was having trouble due to her

physical condition.  As noted above, Plaintiff had commented
to Telson that she was walking off-balance and having
difficulty putting in shelving.  (Dkt. No. 93, Ex. 10,
Telson Dep. 274:22-25.)  Telson testified that he was
concerned about the impact that Plaintiff's work was having
on her because these complaints of physical difficulties
were new.  (Id. at 275:10.)  Moreover, he stated that when
he spoke to Plaintiff to ensure that she was remaining
within her restrictions, she told him that she was working
longer hours than she should.  (Id. at 171:11-12.)
Accordingly, he sought to clarify exactly what Plaintiff's
restrictions were because the most recent records that he
had were from April 14, 2005.

Furthermore, Telson had documented his concerns about
Plaintiff's ability to perform her job in Plaintiff's March
2006 performance review, which covered her work as Store
Manager since October 2005.  Plaintiff met expectations in
many areas with the notable exceptions of "Customer
Service," "Inventory Management," and "Store Condition," in
which Plaintiff received a rating of "Needs Improvement."
(Dkt. No. 93, Ex. 8.)  Significantly, these are all areas
that Telson testified were connected to Plaintiff's
restricted ability to be present on the sales floor.

Plaintiff has offered no evidence to refute Defendant

-24-

Walgreen's proffered explanation. In the end, Plaintiff's repeated assertions that retaliation is established by the temporal proximity between Telson's receipt of medical documentation and her termination provide no evidence on which a jury could determine that Defendant Walgreen retaliated against Plaintiff.

The court further observes that Defendant Walgreen was aware of the lawsuit beginning in July 2005 when Plaintiff first filed her claim with the Connecticut Commission on Human Rights and Opportunities and the Equal Opportunity Employment Commission. Despite this, in October 2005, Plaintiff was promoted and given a raise. (Dkt. No. 80, Ex.1, Jones Dep. 84:6-14.) "Logically, such positive developments cut against any plausible inference of retaliation." <u>Bennett v. Saint-Gobain Corp.</u>, 507 F.3d 23, 32 (1st Cir. 2007) (holding that a favorable performance review and raise undermined employee's claim of retaliation).

For these reasons, the court will allow Defendant Walgreen's motion for summary judgment on Counts I and II of the complaint.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant Walgreen's motion

for summary judgment on Counts I, II, III, and IV (Dkt. No. 73) is hereby ALLOWED, and Plaintiff's motion for partial summary judgment on Counts III and IV (Dkt. No. 85) is hereby DENIED.  In addition, Plaintiff's motion for additional discovery (Dkt. No. 107) is DENIED as moot.  These rulings dispose of Plaintiff's claims of employment discrimination.  It appears that the trial scheduled for April 25 will not go forward.  The court will await the status reports from Plaintiff and Defendant Metlife, due on March 4, 2011 before determining the direction of the case.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge